941 So.2d 618 (2006)
STATE of Louisiana
v.
Gary RILEY.
No. 2005-KA-1311.
Court of Appeal of Louisiana, Fourth Circuit.
September 20, 2006.
*619 Eddie J. Jordan, Jr., District Attorney, Battle Bell IV, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Mary Constance Hanes, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge CHARLES R. JONES, Judge DAVID S. GORBATY, Judge EDWIN A. LOMBARD).
DAVID S. GORBATY, Judge.
On May 26, 2004, Gary Riley was charged with one count of possession of heroin. At his arraignment on May 28, he pled not guilty. The court heard and denied his motion to suppress the evidence on July 16. The court reset trial several times, until March 21, 2005, when a twelve-person jury found him guilty as charged. On May 15, the defendant orally moved for a new trial and for reconsideration of the verdict, and also filed written motions for an appeal, for reconsideration of sentence, and to quash the multiple bill. The court noted that a multiple bill had not yet been filed, and thus the motion to quash it was premature. The court also denied the oral motions for new trial and to reconsider the verdict, and it noted that the motion for appeal would be granted "in due course." The court then sentenced Riley to serve ten years at hard labor. The minute entry of sentencing notes that the court denied the motion to reconsider Riley's sentence. Defendant subsequently filed this appeal.
FACTS
Officer Bryan Bordes testified that he and his partner Officer Rashi Reed arrested the defendant Gary Riley on May 16, 2004. The officers were on patrol in the 3600 block of Thalia Street in the B.W. Cooper housing project, an area known for loitering and drug activity, when they saw Riley stooping near a building in the project. Off. Bordes testified that when Riley saw the officers driving near him, he got up and ran into a hallway of the project. The officers exited their car, and Off. Reed chased Riley into the hallway and up some stairs. Off. Bordes stated that Off. Reed apprehended Riley, handcuffed him, and took him back down the stairs to the police car. Once there, the officers ran Riley's name and discovered there was an outstanding warrant for his arrest. The officers contacted N.C.I.C. and verified that the warrant was still outstanding. They then arrested Riley and advised him of his rights, and Off. Bordes quickly searched Riley's outer clothing, finding nothing.
*620 Off. Bordes testified that before putting Riley into the police car, he checked the back seat and saw nothing on the seat. Off. Bordes stated that the officers then drove Riley to Central Lockup. On the way, the officers could see Riley squirming in the back seat of the squad car. Once at the lockup, the officers saw Riley discard something onto the back seat while exiting the car. Off. Bordes retrieved the object, which was a plastic bag containing four foil packets. The officer opened the bag and found powder inside the foil packets. Believing the substance in the packets to be heroin, the officers then arrested Riley for possession of heroin.
On cross-examination, Off. Bordes admitted he did not remember whether Off. Reed handcuffed Riley while still upstairs or until they had come back downstairs. He also was unsure if Off. Reed frisked Riley for weapons while still upstairs or after they had returned downstairs. Off. Bordes also did not remember if the officers went straight to the lockup after arresting Riley or if they made a stop at a police substation before going to the lockup. He did not remember where the officers completed their paperwork. Off. Bordes testified that it was the officers' usual policy to search the back seat of the police car when they started their shift, as well as before and after transporting suspects in the back seat.
Off. Rashi Reed also testified that he and his partner routinely checked the back seat of the police car at the beginning of their shift, again before placing a prisoner in the back of the car, and once again at the end of the shift.[1] He testified that Riley was the first person they placed in the back seat that day. He stated that they arrested Riley once the outstanding warrant was verified, and his partner searched Riley but found nothing. They put Riley in the back seat of the squad car. On the way to the lockup, they saw Riley squirming in the back seat. Once there, as they were removing Riley from the back seat, Off. Reed saw Riley drop a small bag on the seat. While Off. Reed held Riley, Off. Bordes retrieved the bag, which contained four foil packets containing what appeared to be heroin. The officers then arrested Riley for possession of heroin.
On cross-examination, Off. Reed testified that he first saw Riley standing next to the corner of a building in the housing project. He testified that when Riley ran, he chased Riley to the third floor. He apprehended Riley on the third floor, frisked him for weapons, handcuffed him, and took him back downstairs. He testified that the officers ran Riley's name and discovered the outstanding warrant. They arrested him and advised him of his rights, and his partner searched him. Off. Reed testified that after putting Riley into the back seat of the car, they drove to a nearby police substation to get a supervisor to sign the outstanding warrant and an affidavit for trespassing because Riley did not live in the housing project where the officers arrested him. Off. Reed stated that he did not remember whether the officers took Riley inside the substation while getting the warrant signed. They then took Riley to the lockup, where he discarded the heroin. Off. Reed testified that there may have been an hour's gap between the arrest and Riley's booking at the lockup because Off. Reed may have completed his paperwork in the police car prior to taking Riley inside for booking.
The parties stipulated that Off. "Sam" Nohn V. Hoang was an expert in the *621 chemical analysis and identification of controlled dangerous substances. Off. Hoang testified that he tested the substances in the foil packets, and the powder inside the packets tested positive for heroin.
ERRORS PATENT
A review of the record reveals that the trial court denied the appellant's motions for new trial and to set aside the verdict and then sentenced him on the same day without observing the twenty-four-hour delay mandated by La.C.Cr.P. art. 873. There is no indication in the transcript of sentencing that the appellant waived this delay. However, this error is not fatal to the sentence for two reasons. First, as per La.C.Cr.P. art. 852, a motion for new trial or in arrest of judgment must be in writing. At the sentencing hearing, defense counsel admitted he did not have written motions and was filing only oral motions, to be supplemented with written motions. There is no indication in the record, however, that counsel filed written motions for new trial or in arrest of judgment. Moreover, as per State v. Collins, 584 So.2d 356 (La.App. 4 Cir.1991), the failure to observe the twenty-four-hour delay mandated by La.C.Cr.P. art. 873 is harmless where the defendant does not complain of his sentence on appeal. See also State v. Wheeler, 04-0953 (La.App. 4 Cir. 3/9/05), 899 So.2d 84. Here, the appellant is not challenging his sentence on appeal. Thus, any failure to observe La. C.Cr.P. art. 873's delay is harmless.
There are no other patent errors.
DISCUSSION
In his sole assignment of error, the appellant contends that the trial court erred by denying his motion for mistrial based upon statements made by the prosecutor during closing argument. Specifically, he argues that these statements, which were comments on the credibility of the police officers, unduly bolstered their testimony, there by causing the jury to convict the appellant even in the face of inconsistencies in the officers' testimony.
The remarks to which the appellant refers occurred during the State's closing argument. Defense counsel's cross-examination of the officers highlighted the contradictions in their testimony on certain facts concerning the stop and its aftermath. During the State's argument, the prosecutor referred to this tactic and theorized that if defense counsel's insinuations were true, the officers would have had to conspire to lie that the appellant, whom they did not know, abandoned drugs in the back seat of the police car. To counter the defense that the officers were lying about the arrest, the prosecutor reminded the jury that the appellant was charged with a drug offense, not something as serious as murder. Defense counsel objected at this point, and the prosecutor continued:
He's charged with just possession of heroin, Ladies and Gentlemen. And I submit to you  I don't know what defense attorney doesn't want you to hear. But what you should hear is that these officers are not going to risk their careers just to set up Gary Riley for possession of heroin. Give me a break. These people put their lives on the line everyday [sic]. They work in COPS. They work in the housing projects everyday [sic]. How many of us want to do that everyday [sic]? I tell you I don't. I don't know how many of you up here would want to go in those project [sic] everyday [sic] and work. But you know what? They do it. They do it every day. Every time they leave their homes, they don't know if they're going to make it back. Police officers are shot and killed every year.
At that point, defense counsel again objected and requested a mistrial. The court denied the motion, cautioning the prosecutor *622 to "concentrate on what happened in here today."
Because these comments do not fall within the mandatory mistrial requirements of La.C.Cr.P. art. 770, the appellant now argues that the court should have granted a mistrial or at least admonished the jury under art. 771, which provides in pertinent part:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770;
* * *
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
It must be noted that defense counsel did not request an admonition; thus, the trial court did not err by failing to admonish the jury.
In State v. Clark, 2001-2087, p. 15 (La.App. 4 Cir. 9/25/02), 828 So.2d 1173, 1183, this court set forth the standard for determining whether a prosecutor's remarks are so prejudicial as to warrant a new trial:
The scope of closing argument "shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. The argument shall not appeal to prejudice. The state's rebuttal shall be confined to answering the argument of the defendant." La.C.Cr.P. art. 774. Prosecutors may not resort to personal experience or turn argument into a plebiscite on crime. State v. Williams, 96-1023, p. 15 (La.1/21/98), 708 So.2d 703, 716. However, prosecutors have wide latitude in choosing closing argument tactics. State v. Casey, 99-0023, p. 17 (La.1/26/00), 775 So.2d 1022, 1036, citing State v. Martin, 539 So.2d 1235, 1240 (La.1989) (closing arguments that referred to "smoke screen" tactics and defense as "commie pinkos" were deemed inarticulate but not improper). Further, the trial judge has broad discretion in controlling the scope of closing arguments. Id. Even if the prosecutor exceeds the bounds of proper argument, a reviewing court will not reverse a conviction unless "thoroughly convinced" that the argument influenced the jury and contributed to the verdict. State v. Ricard, 98-2278, p. 4 (La.App. 4 Cir. 1/19/00), 751 So.2d 393, 397. Even where the prosecutor's statements are improper, credit should be accorded to the good sense and fairmindedness of the jurors who have heard the evidence. Williams, supra; Ricard; supra.

The appellant argues that the prosecutor's statements were designed to bolster the credibility of the officers, whose testimony contradicted each other on certain points. The appellant points out that the jury's verdict was ten to two to convict, and he theorizes that absent the prosecutor's endorsement of the officers' credibility, he would not have been convicted.
General comments on the credibility of a witness are not prohibited if the record contains facts which bear on the witness's credibility. State v. Sayles, 395 So.2d 695 (La.1981). In State v. Smith, *623 554 So.2d 676, 681 (La.1989)[2], the Court stated:
[I]t has consistently been held to be reversible error for the prosecutor to express his belief in the guilt of the accused, or the credibility of a key witness, where doing so implies that he has additional knowledge or information about the case which has not been disclosed to the jury. State v. Kaufman, [304 So.2d 300 (La.1974)]; State v. Harrison, 367 So.2d 1 (La.1979); State v. Hamilton, 356 So.2d 1360 (La.1978); State v. May, 339 So.2d 764 (La.1976) (recognizing the stated rule but finding that the prosecutor's comment did not imply to the jury that he had personal knowledge of facts not presented to them indicating the defendant's guilt). . . .
Here, the prosecutor's statements were somewhat based on the evidence presented at trial, in that the officers testified they were assigned to patrol the area which included the housing project, which one of them described as an area known for loitering and drug activity. Arguably, the statements were more likely inferences drawn from the testimony of the officers, which would still fit within the parameters of C.Cr.P. art 774. The statements' purpose was to counter the defense that the officers lied about the appellant dropping contraband in the back of the police car. The statements point out that the officers would be risking their jobs merely to convict the appellant, whom they did not know until they stopped him. Thus, the statements were arguably material.
Moreover, the statements themselves were not so inflammatory as to create undue prejudice to the appellant by contributing to the verdict. Compare Clark, where this court found that the prosecutor's comments did not warrant a new trial. The prosecutor stated that the amount of drugs found in the defendant's possession represented two thousand needles sticking out of his arm, and that if not for the officers involved in the case, drugs would come "pouring" into the city's streets. In State v. Harry, 2001-2336 (La. App. 4 Cir. 6/26/02), 823 So.2d 987, this court found the prosecutor's statement, that the defendant was the type of person to approach the jurors' children or someone they cared about and try to sell them drugs, was improper but did not contribute to the verdict and thus did not entitle the defendant to a new trial. See also State v. Williams, p. 15, 708 So.2d at 716, where the Court found that the prosecutor's statements that the jury should no longer tolerate or excuse killings was not a plebiscite on crime; State v. Deboue, 552 So.2d 355 (La.1989), where the Court found it improper but harmless when the prosecutor stated that the "community is waiting for you to tell them what to do" and told the jurors that the defendants would merely laugh if given life sentences; State v. Johnson, 00-0680 (La.App. 1 Cir 12/22/00), 775 So.2d 670, where the court found improper but harmless the prosecutor's exhortation to the jury to "do the right thing" as citizens of Baton Rouge; State v. Mims, 97-1500 (La.App. 4 Cir. 6/21/00), 769 So.2d 44, where this court refused to grant the defendants a new trial where the prosecutor referred to them as purveyors of drugs and "merchants of death;" and State v. Sugar, 408 So.2d 1329 (La.1982) where the Court noted that the prosecutor's comments that the jury could not "let this happen in the community" and similar comments "flirted with reversible error," but the Court reversed the defendant's conviction on other grounds. Even in the *624 case cited by the appellant, State v. Alexander, 575 So.2d 405 (La.App. 4 Cir.1991), this court found harmless error in the prosecutor's statements that the defendant was a drug dealer who sold death and misery to his neighbors and their children.
Compared to the comments found to be harmless in the cases cited above, the prosecutor's statements here are much less inflammatory. Thus, even if the the statements exceeded the scope of La. C.Cr.P. art. 774 they were not so prejudicial as to warrant the granting of a mistrial pursuant to La.C.Cr.P. art. 771. Contrary to the appellant's argument, they do not appear to have contributed to the verdict because despite the inconsistencies in the officers' testimony, they both testified that they saw the appellant abandon the drugs while getting out of the back seat of the officers' car. Therefore, the trial court properly denied the appellant's motion for mistrial, and it did not err by failing to admonish the jury because counsel did not request an admonition. This assignment of error has no merit
CONCLUSION
Accordingly, for the foregoing reasons, we affirm the appellant's conviction and sentence.
AFFIRMED.
NOTES
[1] The transcript is missing the first page of Off. Reed's testimony, which apparently described the defendant's actions that led the officers to notice and stop him.
[2] Smith was overruled on other grounds, that being the ability of the Court to consider assignments of error in death cases in the absence of a contemporaneous objection, in State v. Taylor, 93-2201 (La.2/28/96), 669 So.2d 364.