999 So.2d 40 (2008)
STATE of Louisiana
v.
Clarence BOYD, Jr.
No. 2008-KA-0659.
Court of Appeal of Louisiana, Fourth Circuit.
November 12, 2008.
*41 Keva Landrum-Johnson, District Attorney, Alyson Graugnard, Assistant District Attorney, New Orleans, LA, for Appellee, State of Louisiana.
Sherry Watters, Louisiana Appellate Project, New Orleans, LA, for Clarence Boyd, Jr.
(Court composed of Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS, Jr., Judge EDWIN A. LOMBARD).
MAX N. TOBIAS, JR., Judge.
On 10 August 2007, the state charged Clarence Boyd, Jr. ("Boyd") by bill of information with one count of theft of an item valued at $500.00 or more, a violation of La. R.S. 14:67 A. On 20 August 2007, Boyd appeared before the trial court for arraignment and pled not guilty to the charge. On 9 October 2007, the trial court heard Boyd's motion to suppress evidence and held a preliminary hearing. At the close of the hearing, the trial court denied Boyd's motion to suppress and found sufficient probable cause to substantiate a charge of theft of an item valued between $300.00 and $500.00.
On 13 November 2007, the state brought its case to trial. Prior to trial, Boyd elected to have his case tried by the judge. The trial court found Boyd guilty of theft of an item valued between $300.00 and $500.00 and sentenced him on 16 November 2007. Prior to sentencing, the Boyd filed, and the trial court denied, a motion *42 for post-verdict judgment of acquittal. Initially, the trial court sentenced Boyd to one year in Orleans Parish Prison with credit for time served. The state noticed its intent to file a multiple bill of information, which would allege that Boyd was a triple felony offender. Further, on 19 November 2007, Boyd filed, and the trial court denied, a motion to reconsider the denial of his motion for post-verdict judgment of acquittal. On 19 November 2007, Boyd also filed a motion for appeal. On 1 February 2008, the trial court resentenced Boyd to one year in the custody of the Department of Corrections, with credit for time served.

STATEMENT OF FACT
At trial, the state first elicited testimony from Officer Larry Kooken. Officer Kooken testified that on 18 July 2007, while assigned to the Second District of the New Orleans Police Department ("NOPD"), he was involved in the investigation and arrest of Boyd. Officer Kooken affirmatively identified Boyd as the individual he investigated and arrested on 18 July 2007. Specifically, Officer Kooken testified that on the date of the incident he and his partner were riding in their police vehicle when they received a report through the NOPD dispatch regarding a stolen bicycle, description of the bicycle, the perpetrator, and the perpetrator's direction of flight. Officer Kooken and his partner were able to reach the vicinity of the incident in approximately two minutes. As they approached, Officer Kooken observed Boyd traveling near the intersection of Burthe and Broadway Streets in New Orleans. Officer Kooken testified that Boyd's appearance matched the description of the perpetrator: an older black man wearing a dark baseball cap, white t-shirt, and khaki pants. Officer Kooken noted that the bicycle in Boyd's possession matched the description of the stolen bicycle: silver, high-end ten-to-twelve-speed bicycle. Also, Officer Kooken noted that when they stopped Boyd, he was approximately one block from the position of the perpetrator's observed flight direction originally given in the NOPD dispatch.
Officer Kooken testified that after he and his partner stopped Boyd they learned that the stolen bicycle was a Cannondale bicycle. The officer testified that they arrested Boyd because they found him in possession of a Cannondale bicycle. The officers read Boyd his Miranda rights and conducted a search of Boyd's person. The search revealed that Boyd was carrying a small ceramic pipe in his right, front pants pocket. Based upon his experience with narcotics enforcement and the physical characteristics of the pipe, Officer Kooken stated that the pipe was a crack pipe.
Officer Kooken also stated that Boyd was placed in the back of the police vehicle after he was arrested. Boyd stated that he understood the charges and admitted to taking the bicycle and leaving his old bicycle at the original crime scene. Thereafter, Officer Kooken and his partner took Boyd to the original crime scene on Palmer Avenue and observed Boyd's original bicycle on the property along with a blue lunch bag which contained some of Boyd's personal effects. Boyd's bicycle, the blue lunch bag, and the personal effects were identified in court by Officer Kooken and introduced into evidence.
On cross-examination, Officer Kooken admitted that he did not conduct a field test on the pipe. He admitted that he did not observe Boyd using illegal narcotics. He further stated that on the day of the incident he neither observed Boyd take the bicycle nor spoke with the reporting witness.
The state also elicited testimony from Officer Eric Risch, Officer Kooken's partner on the date of the incident. Officer *43 Risch testified that he and his partner were in their police vehicle on 18 July 2007 when they received a call from dispatch at approximately 8:10 a.m., advising them of a report of a bicycle theft. Officer Risch testified that as they approached the intersection of Broadway and Burthe Streets they observed Boyd riding a bicycle, and that Boyd and the bicycle respectively fit the description of the perpetrator and stolen bicycle. Officer Risch stated that he and his partner then stopped Boyd for questioning. While questioning him, the officers were able to get a more detailed description of the stolen bicycle, and Officer Risch stated that this additional information lead them to conclude that Boyd was the perpetrator of the bicycle theft. Officer Risch further testified Boyd admitted that he took the bicycle and offered to lead them to the bicycle's original location.
Officer Risch stated that Boyd then directed them to where he took the bicycle and they found a black, Murray bicycle. Boyd then told the officers that the Murray bicycle was his, and admitted to leaving it at the scene of the crime after he took the Cannondale bicycle. Officer Risch noted that while he was at the scene, he spoke to Mrs. Sally Foreman, who confirmed that she was the owner of the Cannondale bicycle, and to Court Carrere, the initial reporting witness, by cell phone. Boyd's counsel did not cross-examine Officer Risch.
The state next called Court Carrere as a witness. Mr. Carrere testified that on the morning of 18 July 2007, he was driving to work on Palmer Avenue. He stated that he has family who live on Palmer Avenue and that he also lives in the area. Mr. Carrere stated that as he was passing the Foreman's house he noticed a person with two bicycles and a grocery cart. He stated that he observed the person attempting to ride one bicycle while holding onto the grocery cart with a free hand. Additionally, Mr. Carrere stated that the other bicycle was on the ground. He stated that he thought the man looked unusual so he circled the block a few times to better observe him. After watching the person for a few minutes, Mr. Carrere then phoned his mother, who lives on Palmer, and gave her a description of the person. Following this testimony, Mr. Carrere made an in-court identification of Boyd as the man he witnessed on the date of the incident. Mr. Carrere next stated that his mother called the police.
Additionally, Mr. Carrere confirmed that he eventually spoke to the police and was brought down to the Second District station to take part in a photographic line-up. There Mr. Carrere identified a photograph of Boyd as the man he observed on the Foreman's property on the date of the incident. On cross-examination, Mr. Carrere admitted that he did not call 911 on the date of the incident, witness Boyd physically removing a bicycle from the Foreman's property, or speak with the police until several weeks after the incident.
Lastly, the state called Mrs. Sally Foreman to testify. Mrs. Foreman stated that she resides at 1806 Palmer Avenue in New Orleans and that a bicycle was taken off her property on 18 July 2007. She noted that the bicycle was on her front porch at the time it was taken. Additionally, Mrs. Foreman testified that she did not give Boyd, or anyone in fact, permission to be on their porch or take the bicycle from their porch. Mrs. Foreman stated that she was notified by a neighbor that her bicycle had been stolen and that the police brought the bicycle back to her approximately 30 to 45 minutes after it had been taken. Additionally, while she could not remember the bicycle's brand name, Mrs. *44 Foreman did testify that the bicycle originally cost approximately $525.00.
On cross-examination, Mrs. Foreman admitted that she did not observe Boyd come on her property or take the bicycle. Further, on re-direct and re-cross examination, she testified that: (1) she and her husband bought two bicycles at Christmas for their children, one of which was the stolen bicycle; (2) the bicycles were purchased at least two years before trial; and (3) both bicycles had a similar value. (We note the lack of any evidence in the record on appeal of the physical condition of the stolen bicycle as of the time of the theft or any statement of the value of the bicycle at the time of its theft.)
The state rested, and Boyd's counsel introduced no testimony or exhibits. After hearing arguments from counsel, the trial court found Boyd guilty of trespassing and possession of drug paraphernalia.[1] Further, the trial court also found Boyd guilty of theft of an item valued between $300.00 and $500.00.

ERRORS PATENT
A review of the record for errors patent reveals one. Specifically, the record indicates that Boyd filed a motion for post-verdict judgment of acquittal on 16 November 2007. The minute entry for that day also indicates that the trial court denied Boyd's motion and then proceeded to sentence defendant.[2] However, there is no indication in the minute entry or the transcript of sentencing that Boyd waived his right to a 24-hour delay between the denial of his motion and the imposition of sentence, as mandated by La.C.Cr.P. art. 873. We note, however, that on 19 November 2007, the trial court entertained, but ultimately denied, Boyd's motion to reconsider his prior motion for post-verdict judgment of acquittal. The record also indicates that on 1 February 2008, Boyd waived any applicable delays for sentencing and the trial court resentenced him.
Any error that might have been committed by the trial court is not fatal to the sentence because as per State v. Collins, 584 So.2d 356 (La.App. 4 Cir.1991), the failure to observe the 24-hour delay mandated by La.C.Cr.P. art. 873 is harmless where the defendant does not complain of his sentence on appeal. See also State v. Riley, 05-1311 (La.App. 4 Cir. 9/20/06), 941 So.2d 618. Boyd is not challenging his sentence on appeal. Thus, any failure to observe the delay mandated by La.C.Cr.P. art. 873's is harmless error
No other patent errors exist.

ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, Boyd argues that his conviction and sentence should be overturned because the trial court failed to obtain a valid waiver of his right to a jury trial before proceeding to hold a judge trial. Specifically, he argues: "The record does not show that Clarence Boyd Jr. was informed by the trial judge of his right to a jury trial. It does not appear in the transcript of the beginning of the trial. The record, in a minute entry or otherwise, does not show that the court addressed the defendant on the matter or that the defendant personally, in writing or in open court, waived the jury." Our review of the record first reveals that Boyd was advised of his right to *45 a jury trial. The minute entry for 20 August 2007 states: "the defendant was informed of his right to a trial by judge or jury." Further, the record also indicates that Boyd's trial counsel responded to the trial court's question regarding his client's choice for the mode of trial by indicating that he elected to have the matter tried before the judge.
Boyd contends that the trial counsel's action did not result in a valid waiver of his right to a jury trial because the trial court should have questioned him personally to insure that he understood the waiver being made on his behalf. Boyd was convicted of theft of an item valued between $300.00 and $500.00, a crime punishable by a term not to exceed two years with or without hard labor. La. R.S. 14:67 B(2). Both the United States Constitution and the Louisiana Constitution expressly guarantee the accused of the right to a jury trial. U.S. Constitution Amendment VI; La. Constitution Article I, §§ 16 and 17. La.C.Cr.P. art. 780 A states that: "A defendant charged with an offense other than one punishable by death may knowingly and intelligently waive a trial by jury and elect to be tried by the judge. At the time of arraignment, the defendant in such cases shall be informed by the court of his right to waive trial by jury."
The waiver of the right to a jury trial cannot be presumed. State v. McCarroll, 337 So.2d 475 (La.1976). The waiver must be established by a contemporaneous record setting forth the articulated appraisal of that right followed by a knowing and intelligent waiver by the accused. State v. Wolfe, 98-0345, p. 6 (La.App. 4 Cir. 4/21/99), 738 So.2d 1093, 1097. The Supreme Court has recognized that the preferred practice is for the trial judge to personally inform the accused of his right and to require the accused to waive that right in writing or orally in open court on the record. State v. Wilson, 437 So.2d 272 (La.1983). However, our courts have been reluctant to adopt an absolute rule requiring the trial court to personally inform the accused of his right to a jury trial, or otherwise render invalid, any election made. State v. Page, 541 So.2d 409 (La. App. 4th Cir. 1989). The Supreme Court has permitted a waiver to be made by defense counsel in cases where the defendant was present in court and failed to object when defense counsel made the waiver. State v. Phillips, 365 So.2d 1304, 1309 (La.1978).
Boyd's failure to object to his counsel's action is construed against him in determining the validity of the waiver made when he was present in court. The record indicates that Boyd was present with counsel when the election of a judge trial was made. He had an opportunity to object, but failed to do so. Boyd had previously been informed of his right to a jury trial at arraignment on 20 August 2007. On 13 November 2007 he elected to be tried by the trial court. Thus, the record indicates that Boyd was aware of and understood his right to a jury trial. His failure to object to his counsel's waiver of the right to a jury trial must be construed against him. We conclude that the record indicates that Boyd knowingly and intelligently waived the right to a jury trial through counsel. Accordingly, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 2
In his second assignment of error, Boyd argues that his conviction and sentence should be reversed because the state failed to prove the value of the bicycle at the time it was taken. The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any *46 rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986). A reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. State v. Shaw, 07-1427, p. 15 (La.App. 4 Cir. 6/18/08), 987 So.2d 398, 408. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. Id. The factfinder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Id. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319, 1324 (La.1992).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, but rather an evidentiary guideline to facilitate appellate review of whether a trier of fact could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987). Additionally, our case law holds that it is not the function of an appellate court to evaluate the credibility of the witnesses and to overturn the trial court on its factual determination of guilt. State v. Richardson, 425 So.2d 1228 (La.1983).
In this case, Boyd was convicted of a theft of property having a value of more than $300.00, but less than $500.00. The offense of theft is defined in La. R.S. 14:67 as follows:
A. Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
B. (1) Whoever commits the crime of theft when the misappropriation or taking amounts to a value of five hundred dollars or more shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than three thousand dollars, or both.
(2) When the misappropriation or taking amounts to a value of three hundred dollars or more, but less than a value of five hundred dollars, the offender shall be imprisoned, with or without hard labor, for not more than two years, or may be fined not more than two thousand dollars, or both.
(3) When the misappropriation or taking amounts to less than a value of three hundred dollars, the offender shall be imprisoned for not more than six months, or may be fined not more than one thousand dollars, or both. If the offender in such cases has been convicted of theft two or more times previously, *47 upon any subsequent conviction he shall be imprisoned, with or without hard labor, for not more than two years, or may be fined not more than two thousand dollars, or both.
C. When there has been a misappropriation or taking by a number of distinct acts of the offender, the aggregate of the amount of the misappropriations or taking shall determine the grade of the offense.
Thus, in order for a defendant's conviction to be upheld on appeal, the state must have proven the following essential elements beyond a reasonable doubt: (1) that the defendant misappropriated or took; (2) a thing of value; (3) that belonged to another; and (4) that the defendant had the intent to deprive the owner permanently of that which was misappropriated or taken. State v. Pittman, 368 So.2d 708 (La. 1979). The state must further prove the value of the stolen property, for upon this proof depends the determination of the severity of the theft, and the punishment for a convicted offender. State v. Monterroso, 96-376, p. 5 (La.App. 5 Cir.11/14/96), 685 So.2d 249, 251.
Boyd asserts that the evidence adduced at trial is insufficient to support his conviction for theft of an item valued at between $300.00 and $500.00 because: (1) the state failed to introduce the bicycle, or a photograph of the bicycle, into evidence; (2) Mrs. Foreman failed to testify that she had personally purchased the bicycle or had personal knowledge of its cost; and (3) no testimony was elicited as to the condition of the bicycle at the time it was taken. Our review of the record establishes that (1) the bicycle's purchase price was approximately $525.00; (2) while she could not remember exactly, Mrs. Foreman testified that either she or her husband purchased the bicycle; (3) the bicycle was bought as a Christmas present for her son two Christmases previous; and (4) two bicycles were purchased simultaneously and both had similar purchase prices. Thus, Boyd correctly asserts that the state did not introduce the bicycle, or a photograph, into evidence and no testimony exists as to its current condition or value.
The state argues that it presented sufficient evidence by which a reasonable factfinder could hold that the value of the stolen bicycle was between $300.00 and $500.00. In support of its argument, the state relies upon State v. Dilworth, 358 So.2d 1254 (La.1978), where the Supreme Court stated the following concerning evidence sufficient to prove value:
In State v. McCray, La., 305 So.2d 433 (1974), we stated:
"Unless it is shown the owner lacks knowledge of the value of a movable [furniture], his testimony as to value is generally admissible, with its weight being left to the jury. 3 Wigmore on Evidence, Section 716 (Chadbourn ed., 1970)."
As expressed in 3 Wigmore on Evidence, Section 716 (Chadbourn ed., 1970), the rule concerning the ability of the owner to place a value upon his movable property is:
"The owner of an article, whether he is generally familiar with such values or not, ought certainly to be allowed to estimate its worth; the weight of his testimony (which often would be trifling) may be left to the jury; and courts have usually made no objections to this policy."
"However, where it appears (either expressly or by reasonable inference) that the owner in fact lacks knowledge of the particular value at issue, his opinion may be ruled inadmissible."
. . . It is not necessary that an owner be qualified as an expert in order to testify as to the value of the thing owned by him. Here the owner was not shown to lack knowledge of the value of the *48 thing stolen. Thus, the owners' testimony as to the value of the fence was properly admitted over his objection that they were not experts. State v. Curtis, La., 319 So.2d 434 (1975).
The state asserts, and the record confirms, that Mrs. Foreman testified clearly, and without contradiction, that the bicycle cost over $500.00 when purchased. However, no evidence exists in the record to indicate the value of the bicycle two years later.
In State v. Williams, 610 So.2d 129, 130 (La.1992), the Court stated:
On the night of September 13, 1990, the Eldorado Cadillac owned by Mary Petty disappeared from the parking lot of the Esplanade Mall in New Orleans. Three days later, the police stopped the defendant after he ran a stop sign in the Cadillac and placed him under arrest for possession of stolen property. The steering column of the Cadillac had been broken and its ignition hotwired to remove it from the Esplanade Mall parking lot. At trial, Ms. Petty testified that she had purchased the vehicle in 1980 for $25,200.00 and intended to trade it in because of maintenance problems. The car was still in running condition although its paint color had faded from "Desert Rust" to a metallic silver. Ms. Petty maintained only liability insurance on the vehicle. The trial court sustained defense counsel's hearsay objection when the state asked Ms. Petty what she knew about the blue book value of the car from her dealer. The court also sustained defense objections when the state asked the witness whether her vehicle was worth over $500.00. The state did not introduce any photographs of the vehicle and the rulings left the jurors with only the original purchase price of the car and the fact of its operable status to determine its value some ten years later.
La.Rev.Stat. 14:69 proscribes the intentional possessing, receiving, or concealing of "anything of value. . . ." The latter phrase "must be given the broadest possible construction, including any conceivable thing of the slightest value, movable or immovable. . . ." La.Rev. Stat. 14:2(2). While the state's case may have asked jurors to speculate on the range of values for the Cadillac, a rational trier-of-fact could have determined that the vehicle had some value, if no more that the $20., defendant told the police he had paid for the vehicle after his first explanation, that he had borrowed the Cadillac from his uncle, failed to account for the hotwired ignition. See State v. Valery, 532 So.2d 536 (La. App. 1st Cir.1988). The court of appeal therefore erred in failing to modify the verdict under La.Code Crim.Proc. art. 821 and to order entry of a judgment of conviction of the lesser included responsive offense of possession of stolen property valued at less than $100.00.

CONCLUSION
Based on Williams and the record before us, we hold that the evidence is insufficient to find Boyd guilty of La. R.S. 14:67 B(1). Pursuant to La. C. Cr. P. art. 821 E, we are authorized to and do hereby enter a judgment of guilty to the lesser and included offense of possession of stolen property valued less than $300.00, in violation of La. R.S. 14:67 B(3). Accordingly, this case is remanded to the trial court for resentencing Boyd on the modified judgment of conviction.
CONVICTION REVERSED AND MODIFIED; SENTENCE VACATED; REMANDED FOR RESENTENCING.
NOTES
[1] Boyd was charged with trespassing and possession of drug paraphernalia pursuant to a different bill of information. Thus, his convictions for these offenses are not under review in the present proceeding.
[2] The transcript reveals that the parties did not argue the merits of Boyd's motion before the trial court and the trial court did not deny the motion on the record.