MAX N. TOBIAS, JR., Judge.
LOn 14 July 2010, the state charged Percy Molere (“Molere”) with one count of simple burglary and one count of illegal possession of stolen things, violations respectively of La. R.S. 14:62 and La. R.S. 14:69 A. At his 20 July 2010 arraignment, Molere entered a plea of not guilty to the charges. On 28 February 2011, a preliminary hearing was held, and the court heard Molere’s motions to suppress the evidence and identification. At the conclusion of the hearing, the court found that sufficient probable cause existed to hold Molere for the charges and denied his motions.
On 28 March 2011, a six-person jury was hung and unable to return a verdict as to count one, simple burglary. As to count two, illegal possession of stolen things over five hundred dollars, the jury found Mol-ere guilty. After the jury could not reach a verdict as to count one, the court dismissed the jury and declared a mistrial as to that count. On 2 May 2011, Molere filed a motion for a post-verdict judgment of acquittal and a motion for new trial which the court denied. He also pled guilty as charged to count one. On that same date, the court sentenced Molere to serve eight years at hard labor with credit for time served as to each count, to be served concurrently. However, a multiple offender bill was filed by the state, and | gMolere enter a plea of guilty to the bill. The trial court then vacated the eight-year sentence on the simple burglary count and resentenced Mr. Molere to eight years at hard labor with credit for time served as a third felony offender. This timely appeal followed.
I.
At trial, Officer Naja Davis testified that she became involved with the investigation of this crime when she was dispatched to a call regarding an auto burglary that occurred at the intersection of Magazine and Notre Dame Streets. After arriving on the scene, Officer Davis canvassed the area looking for a subject who fit the description that was provided to her, to-wit, for a “black male wearing an orange shirt and black pants.” After proceeding five to eight blocks to the intersection of Howard Avenue and Baronne Street, the officer observed a subject fitting the description. The officer stated that she made eye contact with the subject, and at this point she began to follow him in her vehicle. At some point, the subject lay on the ground and hid in some bushes at 1139 Oretha Castle Haley Boulevard, where he was eventually apprehended. When the officer found the subject, she also found a plastic bag containing property lying on the ground approximately two to three inches next to him. At that point the subject was asked to stand up and he was advised that he was being investigated for automobile burglary. The officer confiscated the evidence and the subject’s clothing (which fit the description that had been provided to her) and placed the items on the books as evidence. Also, the suspect was eventually positively identified by the witness and the victim also identified her *1052 property. At trial, the evidence (the perpetrator’s clothing and stolen property) was presented to the officer for identification. The stolen property included a digital camera, camera charger, iPod, and iPod charger. [sThe officer also identified the clothing as that worn by the perpetrator at the time of arrest, the electronics property that were stolen, and the clear plastic bag that contained the stolen property.
On cross examination, Officer Davis testified that she heard about the burglary on the radio and did not see the person who had actually broken into the car. However, she testified that the incident occurred around 9:30 a.m. She stated that the description of the perpetrator was “black male, orange shirt, black pants;” however, the description did not contain details of the person’s physical appearance. She also testified that the dispatcher provided her with a flight direction that led her to a certain area to start canvassing. The officer testified that she did not recall observing the subject with a white bag when he was at the corner of Howard and Baronne.
Ms. Rita Gokturk (“Gokturk”) testified that on 11 July 2010 she was at her home at 760 Magazine Street doing paperwork, when she heard a crashing sound. She went to her window and noticed that the window of a car parked underneath her apartment was cracked (appeared like a spider’s web) but not completely broken. She decided to watch the area, and a couple of minutes later she observed an African American male with an orange shirt with white writing on it, black pants, and “funky shoes” crossing the street. Gok-turk testified that she lost sight of the subject and watched for a couple more minutes, got bored, and went to her desk and sat down. She then heard a second cracking sound, heard glass falling to the ground, and looked out of the window. At this point, she observed the back of a man with black pants and an orange shirt trying to reach for something inside a car. She testified that she did not see the man’s face, but she became angry and so she knocked on the window.
14Gokturk testified that she then ran outside; at this time the subject was walking toward Magazine Street. She testified that the subject was walking with his hands in front of him rather than along his sides. She yelled at the subject and told him “I saw you steal something,” but he did not turn around. She then called 911. When the police arrived, they took her to their precinct and asked her if she recognized the person sitting in a police car. She testified that the person was the African American male with the orange shirt with white writing. Gokturk testified that she did not know his face because she had focused on the orange shirt; however, she did recall that she had observed facial hair.
Gokturk testified that she could not state whether or not he was the same person, but questioned the number of people who would have been wearing black pants and a bright orange shirt with big white writing walking in the direction that she had pointed out to the police. She identified the orange shirt in court as the one she saw that day. When questioned about the jeans, she noted that the pants presented in court were navy colored. However, she testified that they were similar enough. She also testified that navy blue could have been the color, but noted that the pants did not have any cuffs. When questioned again about the pants, Gokturk testified that she was one hundred percent sure that the pants that were presented were not the pants from that day. However, she did identify the shoes. She also testified that she wrote a statement, signed it, and provided it to police on that day.
*1053 When cross examined, Gokturk testified that she gave her handwritten statement to the “female officer.”[1] She also stated that a male African American officer was also present when she gave the statement to the female officer. She |finoted that she physically handed the statement to one of the officers. Gokturk also testified that someone affiliated with Molere’s defense visited her apartment, and she gave a statement to them. She clarified that she did not see anyone after she heard the first crash on the car window because after she climbed on the couch to look out of the window the person was no longer there. She also testified that the man with the orange shirt wore black short pants that were not cuffed. She testified that when she saw him walking after the incident, the subject made a left turn on Magazine from Notre Dame Street. On re-direct, Gok-turk reiterated that she was sure that the orange shirt was the same shirt that she saw outside her window.
Ms. Nicole D’Luca (“D’Luca”) testified that on 11 July 2010, she lived in the New Orleans warehouse district. She also stated that her car was burglarized on 11 July 2010. She testified that a police car was present when she arrived at her car on that morning. She noted that her driver’s side window was broken out, and the police had a gentleman in custody. The police officer told her that she caught the gentleman breaking into her car. D’Luca testified that she was shown the items that were taken from her car, and she identified them as her property. She was asked to identify the items and what they were “worth.” She was shown a red Kodak camera that her “little sister” had left in her car and said it was worth “maybe” $220;[2] an iPod worth $450 and that she had paid that amount for it, and a battery charger worth $50. She stated that she did not give anyone permission to go into her car and take the items. She further testified that Molere is not a friend, Land that she had never seen him until that day. On cross examination, D’Luca testified that the officer was at her vehicle completing paperwork when she arrived at her car.
When questioned regarding whether he had received a handwritten statement from any witness in this case, Officer Gir-oir testified that he had not.
Sandy Gavin (“Gavin”) was also called as a witness to give a note of evidence. He testified that he did a record search under item number G15122-10 and the New Orleans Police Department did not receive any statements from any witnesses or victims in this case.
II.
A review of the record reveals two patent errors with respect to Molere’s sentence. The record shows the trial court denied Molere’s motions for new trial and for post-verdict judgment of acquittal on the day of sentencing. Under La.C.Cr.P. art. 873, a sentence shall not be imposed until twenty-four hours after a motion for new trial has been overruled. Molere did not assert that an excessive sentence as an assignment of error. This court has held that the failure to observe the statutory delay is deemed harmless error where a defendant does not challenge his sentence *1054 on appeal. See State v. Riley, 05-1311 (La.App. 4 Cir. 9/20/06), 941 So.2d 618; State v. Collins, 584 So.2d 356 (La.App. 4th Cir.1991). Accordingly, in the present case where no error is raised as to the appellant’s sentence, the failure of the trial court to observe the twenty-four-hour delay period is deemed harmless error.
The second patent error reveals that the sentence imposed by the trial court is illegally lenient. Molere was initially sentenced to eight years at hard labor for |7count one and eight years at hard labor for count two. After being adjudicated a third offender, the trial court vacated the original sentence and resen-tenced him under the multiple offender statute to eight years at hard labor. However, La. R.S. 15:529.1 G provides that all sentences imposed under the statute are to be served without benefit of probation or suspension of sentence. La. R.S. 15:301.1 A provides that in instances where the statutory restrictions are not recited at sentencing, they are included in the sentence given, regardless of whether or not they are imposed by the sentencing court.
Furthermore, in State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, the Court ruled that paragraph A of La. R.S. 15:301.1 self-activates the correction and eliminates the need to remand the matter for a ministerial correction of an illegally lenient sentence, which results from the failure of the sentencing court to impose punishment in conformity with that provided in the statute. Hence, this court need take no action to correct the district court’s failure to specify that Molere’s sentence be served without benefit of probation or suspension of sentence. The correction is statutorily effectuated. State v. Phillips, 03-0304 (La.App. 4 Cir. 7/23/03), 853 So.2d 675.
III.

ASSIGNMENT OF ERROR NUMBER 1

In his sole assignment of error, Molere contends that the state failed to prove beyond a reasonable doubt that he was guilty of possession of stolen property valued at over $500. He argues that the state did not produce evidence as to the date of purchase, the condition of the items, or their value on the date of the incident. Rather, he argues that the only evidence of the value of the items was D’Luca’s testimony about their purchase price.
|sGenerally, in a case involving a challenge of the sufficiency of the evidence, the standard of appellate review is whether, viewing the evidence in the light most favorable to the prosecution, a rational fact finder could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 309, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Article I, § 19 of the Louisiana Constitution guarantees defendants a right of appeal “based upon a complete record of all the evidence upon which the judgment is based.” See also State v. Frank, 99-0553 (La.1/17/01), 803 So.2d 1, 19. “In reviewing the evidence, the whole record must be considered because a rational trier of fact would consider all of the evidence, and the actual trier of fact is presumed to have acted rationally until it appears otherwise.” State v. Mussall, 523 So.2d 1305, 1310 (La.1988).
Molere was charged under La. R.S. 14:69 B(l), as it existed at the time of the offense.[3] When the defendant is charged *1055 with possession of stolen property valued at $500 or more it is essential for the state to prove the value of the property possessed. State v. Bell, 544 So.2d 32, 34 (La.App. 4th Cir.1989). In satisfying its burden of proof, the state may introduce into evidence the physical items possessed by the accused thus enabling the jury to examine them and determine their condition and value. Id. at p. 2, 544 So.2d at 34, citing, State v. Lambert, 475 So.2d 791 (La.App. 3rd Cir.1985). In this case, the state introduced the Kodak camera, the iPod, and the battery charger into evidence at trial. The dialogue that occurred on direct examination reads as follows:
Q. Would you please open the bag and examine those items.
IflA. (WITNESS COMPLIES)
Q. Do you recognize them?
A. Yes. It’s a red Kodak camera that my little sister left in my car.
Q. And how much is that worth?
A. It was $220, maybe.
Q. Thank you.
A. And this is my iPod that was plugged into the console.
Q. And about how much is that worth?
A. It’s a $450.00 item. It’s a battery charger, charges multiple batteries, and it is probably worth about $50.
Q. How much did you pay for it?
A. I think I paid like 60 something dollars for it from Radio Shack.
Q. And the iPod, how much did you pay for that?
A. The iPod I paid $450 for it.
The items were admitted into evidence and placed upon a table in the courtroom; the jurors were able to view them.
La. R.S. 14:69 B in pertinent part states:
(2) When the value of the stolen things is five hundred dollars or more, but less than one thousand five hundred dollars, the offender shall be imprisoned, with or without hard labor, for not more than five years, or may be fined not more than two thousand dollars, or both.
(3) When the value of the stolen things is less than five hundred dollars, the offender shall be imprisoned for not more than six months or may be fined not more than one thousand dollars, or both. If the offender in such cases has been convicted of receiving stolen things or illegal possession of stolen things two or more times | inpreviously, upon any subsequent conviction, he shall be imprisoned, with or without hard labor, for not more than two years or may be fined not more than two thousand dollars, or both.
No receipts or expert opinions were presented as to the value of the items taken. Although the state put on no evidence proving the actual “value” of the items, the jury had the opportunity to view the items. The jury therefore based their conclusion of the aggregate value of the items on D’Luca’s statement of the worth as to the camera and charger and the cost of the iPod, and their opportunity to observe the items and form conclusions as to the value of the items they evaluated. In addition, although the victim did not know the value of the camera, she testified to how much she paid for the iPod and the charger, which together were over $500. Pursuant to Bell and in a light most favorable to prosecution as mandated by Jackson, we find that the state satisfied its burden of proving that the property was valued at $500 or more.
In his original brief, Molere cites to State v. Carthan, 00-0359 (La.1/12/01), 778 So.2d 547 to support his argument. We find Carthan distinguishable. In Carthan, the owner of the stolen property testified that the owner of a recycling center gave him the property. The co-owner of the *1056 recycling center testified that the property was only valued at $65. Since the property owner did not purchase the property and testimony was presented regarding the true value of the property, Carthan is inapplicable.
Molere also cites to State v. Peoples, 383 So.2d 1006 (La.1980) and asserts that Peoples is directly on point with the present case. However, the case is also distinguishable. In Peoples, the stolen property received by the defendant | n consisted of a copying machine purchased in 1967 for $85, two adding machines purchased in 1972 for $316.80 and an electric typewriter purchased in 1968 for $160. Unlike the case at bar, the owner of the property did not testify, and the state only produced a receipt documenting the items that were stolen. An office employee was also a witness and she testified to the replacement cost of the items. However, the employee was unaware of the value of the property at the time of the theft. As previously noted, in this case the victim testified to the worth and/or value and the jurors also had the opportunity to view and inspected the property and make their own assessment as to the value. We find Peoples does not support Molere’s position.
The stolen items do not physically form part of the record on appeal and no photographs of the items were taken for purposes of placing the photographs in the record. We were concerned whether we could properly perform our appellate review function required by La. Const, art. I, § 19. Accordingly, we ordered that clerk of the trial court, the trial court judge, and the district attorney to produce the stolen property evidence. They responded that they did not have it. We also requested the parties to supplement their original briefs addressing the absence of that stolen evidence from the record on appeal in light of the constitutional requirements of Jackson, supra, and State v. Frank, 99-0553 (La.1/17/01), 803 So.2d 1.
In response, Molere cited us to jurisprudence of, inter alia, State v. Fortenberry, 11-0022 (La.App. 4 Cir. 7/27/11), 73 So.3d 391; State v. Carthan, supra; State v. Boyd, 08-0659 (La.App. 4 Cir. 11/12/08), 999 So.2d 40; State v. Monterroso, 96-376 (La.App. 5 Cir. 11/14/96), 685 So.2d 249; State v. Hoskin, 605 So.2d 650 (La.App. 4th Cir.1992); State v. Bell, supra; State v. Williams, 610 |12So.2d 129 (La.1992); State v. Peoples, supra; State v. Walker, 02-1350 (La.App. 4 Cir. 4/9/03), 844 So.2d 1060; State v. Demise, 98-0541 (La.4/3/01), 802 So.2d 1224; State v. LeBlanc, 367 So.2d 335 (La.1979); State v. Green, 315 So.2d 763 (La.1975); State v. Andrews, 527 So.2d 411 (La.App. 4th 1988); State v. Byrd, 385 So.2d 248 (La.1980); State v. Gould, 395 So.2d 647 (La.1980); State v. Diggs, 93-0324 (La.App. 4 Cir. 6/29/95), 657 So.2d 1104; State v. Bright, 00-1255 (La.App.2/6/02), 809 So.2d 1112; State v. Lewis, 95-0769 (La.App. 4 Cir. 1/10/97), 687 So.2d 1056; State v. Jones, 351 So.2d 1194 (La.1977); State v. Bizette, 334 So.2d 392 (La.1976); and U.S. v. Atilus, 425 F.2d 816 (5th Cir.1970). We have reviewed these cases and others and conclude that they are either inapplicable or distinguishable on their facts. Certainly, if a material portion of the transcript were unavailable, we would have a different issue.
The record is devoid of any attack during the trial as to the valuation of the items at the time they were stolen or at the time of trial. The defense did not, for example, reference the physical condition of the stolen items during cross examination of the victim nor inquire as to when the victim acquired them (to establish their age); neither did the defense in closing argument argue that the items in their depreciated condition were valued in the *1057 aggregate at less than $500. In closing argument, the defense concentrated on the proverbial “SODDI defense” as defined in Black’s Law Dictionary, 8th Edition. Such was the defense’s trial strategy. Although such might rise to the level of ineffective assistance of counsel that could be raised in an application for post-conviction relief, we conclude that the error, if one exists in the context of this case and on the basis of the trial transcript, is either non-reversible error under State v. Juluke, 98-0841 (La.1/8/99), 725 So.2d 1291, or harmless error under La.C.Cr.P. art. 921.
JjfIV.
For the foregoing reasons, we affirm Percy J. Molere, Jr.’s conviction and his sentence.[4]
AFFIRMED.

. The female officer is Officer Davis.

. The precise testimony is ambiguous as to whether D'Luca or her sister owned the camera. In context, the testimony can be read to mean that the witness owned the camera and her sister had left it in the car. The language could by implication mean that the witness’ sister owned the camera thus making the testimony as to valuation hearsay; the defense did not object and no clarification of the matter was sought by anyone.

. La. R.S. 14:69 was amended in 2010 increasing the value of stolen property listed in each subparagraph of 14:69 B. The effective date of the amendment was 15 August 2010, a date after the date of the offense in this case.

. See State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790; La. R.S. 15:301.1; and State v. Phillips, 03-0304 (La.App. 4 Cir. 7/23/03), 853 So.2d 675, discussed supra.